IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MILLENNIUM PROPERTIES R/E, INC., an Illinois Corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:14-CV-4431 |
| v. | ) ) | |
| RGA REINSURANCE COMPANY, a Missouri Corporation | ) ) ) | |
| Defendant. | ) | |

**RGA REINSURANCE COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S VERIFIED COMPLAINT**

Defendant, RGA REINSURANCE COMPANY ("RGA"), by and through its attorneys,

David F. Schmidt and Robert S. Hunger of Chittenden, Murday & Novotny LLC, states as follows

for its Answer and Affirmative Defenses to Plaintiff's Verified Complaint:

**JURISDICTION AND VENUE**

1.      MPI is an Illinois corporation doing business in the state of Illinois.

**ANSWER:**      RGA admits the allegations contained in Paragraph No. 1.


2.      RGA Reinsurance Company ("RGA" or "DEFENDANT") is a Missouri corporation doing business within the County of Cook, Illinois, with its principal place of business at 1370 Timberlake Manor Parkway, Chesterfield, Missouri 63017-6039.

**ANSWER:**      RGA admits the allegations contained in Paragraph No. 2.


3.      All the occurrences alleged of and complained of in this Complaint occurred in Cook County, Illinois.  Likewise, the property which is the subject of this action, 801-860 North Quentin Road, Palatine, IL 60067 (the "PROPERTY") is located in Cook County.

**ANSWER:**     RGA admits that the property which is the subject of this action is located in Cook

County but denies the remaining allegations of Paragraph No. 3.

4.      Pursuant to Section 5/2-101 of the Illinois Code of Civil Procedure, Cook County
is the proper venue for this action.

**ANSWER:**     RGA admits that venue was proper in Cook County and that venue is currently

proper in the Northern District of Illinois.

### FACTS COMMON TO ALL COUNTS

5.      On or about April 18, 2013, MPI was appointed the exclusive broker of the [sic]
RGA's position as note and mortgage holder of the property commonly known as 801-860 North
Quentin Road, Palatine, IL 60067 (the "PROPERTY") pursuant to a signed Engagement Letter
("AGREEMENT") by and between MPI and RGA.  A true and accurate copy of the AGREEMENT is
attached hereto and incorporated herein as **EXHIBIT A**.

**ANSWER:**     RGA admits that Exhibit A appears to be a true and accurate copy of an

"Engagement Letter" signed on or around April 18, 2013 which relates to the referenced property,

but denies that the Engagement Letter constitutes a valid and enforceable contract between RGA

and Millennium Properties R/E, Inc. ("Plaintiff") or that Jeff Deters possessed the requisite

corporate authority to enter into contracts on behalf of RGA or otherwise bind RGA.  RGA denies

the remaining allegations of Paragraph No. 5 to the extent they are inconsistent with this answer.

6.      Pursuant to the AGREEMENT, MPI was the exclusive agent for the sale of RGA's
position as mortgagee in respect to the PROPERTY.

**ANSWER:**     RGA admits that the Engagement Letter classifies Plaintiff as "the sole agent acting

exclusively on behalf of RGA to market the acquisition of the above referenced instrument," but

denies that the Engagement Letter qualifies as a valid and enforceable contract or that the

Engagement Letter prevented RGA from entering into a transaction without the use of an agent.

RGA denies the remaining allegations of Paragraph No. 6 to the extent they are inconsistent with this Answer.

7.     MPI's exclusive agency commenced on April 18, 2013 and ended on October 18, 2013 ("Period of Exclusivity").  *See id.*

**ANSWER:**     RGA admits that the Engagement Letter indicates that Plaintiff "shall be the sole agent acting exclusively on behalf of RGA to market the acquisition of the above referenced instrument" from April 18, 2013 to October 18, 2013, but denies that the Engagement Letter constitutes an enforceable contract or that the Engagement Letter prevented RGA from entering into a transaction without the use of an agent.  RGA denies the remaining allegations of Paragraph No. 7 to the extent they are inconsistent with this Answer.

8.     Pursuant to the Agreement, MPI was granted the exclusive right to sell RGA's position as mortgagee of the Property in exchange for a brokerage commission of 3.00% of the gross purchase price of any sale of RGA's position.  *See id.*

**ANSWER:**     RGA admits that the Engagement Letter indicates that, upon completion of several prerequisites, Plaintiff could be entitled to a commission of 3.00% of the "gross price," but denies that the Engagement Letter qualifies as an enforceable contract or that the Engagement Letter prevented RGA from entering into a transaction without the use of an agent.  RGA denies the remaining allegations of Paragraph No. 8 to the extent they are inconsistent with this Answer.

9.     MPI relayed numerous offers to RGA from offerors who wished to purchase RGA's position as mortgagee of the Property, including one particular offer which RGA rejected against the advice of MPI.

**ANSWER:**     On information and belief, RGA admits that Plaintiff named three potential offerors, that none of the potential offerors were satisfactory or ready, willing and able offerors,

and that RGA accordingly rejected such offers. RGA denies the remaining allegations of Paragraph No. 9 to the extent they are inconsistent with this Answer.

10.     In addition to the foregoing and other marketing efforts, MPI sent an email blast to potential buyers regarding the PROPERTY at various times during the Period of Exclusivity.

**ANSWER:**     RGA lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph No. 10.

11.     This email was sent to Quantum Real Estate Advisors, Inc. which subsequently formed an LLC, Core Quentin Corners, LLC ("BUYER"), to purchase RGA's position as mortgagee of the PROPERTY.

**ANSWER:**     RGA lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph No. 11.

12.     On [sic] or about July of 2013, during the Period of Exclusivity, BUYER directly contacted RGA to purchase RGA's position as mortgagee of the PROPERTY.

**ANSWER:**     RGA denies the allegations contained in Paragraph No. 12.

13.     RGA concealed from MPI that RGA had been contacted by BUYER to negotiate the purchase of RGA's position as mortgagee of the PROPERTY.

**ANSWER:**     RGA denies the allegations contained in Paragraph No. 13.

14.     Likewise, RGA deliberately concealed from MPI the entirety of RGA's direct negotiations with BUYER to sell RGA's position as mortgagee of the PROPERTY.

**ANSWER:**     RGA denies the allegations contained in Paragraph No. 14.

15.    On or about December 3, 2013, RGA stated that it had made no efforts to sell its interest as mortgagee in the PROPERTY and that it was intending to proceed with the foreclosure of the PROPERTY, pursuant to RGA's interest as mortgagee of the PROPERTY.

**ANSWER:**    On information and belief, RGA admits that an RGA employee, who was unaware of and not involved in any purported discussions with any potential buyer, told an employee of Plaintiff that RGA intended to foreclose on the property.  RGA denies the remaining allegations to the extent they are inconsistent with this answer.

16.    Several weeks later, on or about December 18, 2013, RGA assigned its interest as mortgagee of the PROPERTY and all the relevant loan documents to BUYER for, upon information and belief, $2.95 million.

**ANSWER:**    RGA denies that it assigned its interest as mortgagee for $2.95 million.  RGA admits the remaining allegations contained in Paragraph No. 16.

17.    RGA knowingly concealed from MPI RGA's sale and assignment of its interest in the PROPERTY to BUYER.

**ANSWER:**    RGA denies the allegations contained in Paragraph No. 17.

18.    RGA concealed the fact that BUYER directly contacted, negotiated, and purchased RGA's position as mortgagee of the PROPERTY in an effort to avoid paying PLAINTIFF the commission it earned.

**ANSWER:**    RGA denies the allegations contained in Paragraph No. 18.

19.    As exclusive sales agent, MPI should have been made aware of all nominees who approached RGA during the Period of Exclusivity either on their own or through another broker or third party source.

**ANSWER:**    RGA denies the allegations contained in Paragraph No. 19.

20.     Pursuant to Illinois law, MPI is entitled to 3% of the gross sales price of RGA's position as mortgagee of the PROPERTY as the BUYER made contact with RGA during the pendency of the Exclusivity Period.

**ANSWER:**     RGA denies the allegations contained in Paragraph No. 20.

21.     PLAINTIFF is entitled to recover its commission as provided for in the AGREEMENT, 3.0% of the gross sales prices of RGA's position as mortgagee of the PROPERTY, upon information and belief, Eighty-Eight Thousand Five Hundred and 00/100 Dollars ($88,500.00).

**ANSWER:**     RGA denies the allegations contained in Paragraph No. 21.

22.     Demand has been made by MPI upon RGA for the broker's fee to which MPI is entitled. RGA has refused to honor MPI's demand.

**ANSWER:**     RGA admits that Plaintiff demanded a commission payment, but denies that Plaintiff is entitled to any such payment. Further answering, RGA admits that it refused to pay Plaintiff a commission because Plaintiff was not and is not entitled to any commission or payment.

## COUNT I – BREACH OF CONTRACT

23.     PLAINTIFF hereby restates, re-alleges and incorporates by reference Paragraphs 1 through 22 as though fully set forth herein.

**ANSWER:**     RGA hereby restates, re-alleges and incorporates by reference its answers to Paragraphs 1 through 22 as though fully set forth herein.

24.     RGA expressly accepted the AGREEMENT on April 18, 2013 by signing same.

**ANSWER:**     RGA denies the allegations contained in Paragraph No. 24. Further answering, the RGA employee alleged to have signed the Engagement Letter lacked the requisite corporate authority to enter into contracts on behalf of RGA or otherwise bind RGA.

25.     At all times herein relevant, RGA had knowledge that MPI was the exclusive broker of RGA's position as mortgagee of the PROPERTY as it was routinely advised by MPI of offers that were made for RGA's position as mortgagee of the PROPERTY and that various marketing efforts were being conducted.

**ANSWER:**     RGA denies the allegations contained in Paragraph No. 25.


26.     RGA has breached its contractual obligations by failing to reimburse PLAINTIFF for its commission earned as a result of the sale of RGA's position as mortgagee of the PROPERTY.

**ANSWER:**     RGA denies the allegations contained in Paragraph No. 26.


27.     PLAINTIFF fully performed its obligations under the terms of the AGREEMENT by procuring a BUYER for RGA's position as mortgagee of the PROPERTY.

**ANSWER:**     RGA denies the allegations contained in Paragraph No. 27.


28.     Despite demand, RGA has failed and continues to fail to honor its contractual obligations by refusing to reimburse PLAINTIFF for the commission it earned.

**ANSWER:**     RGA denies the allegations contained in Paragraph No. 28.


29.     RGA's breach has caused MPI to suffer damages in the approximate amount of Eighty-Eight Thousand Five Hundred and 00/100 Dollars ($88,500.00), plus attorneys' fees in connection with the enforcement of the AGREEMENT.

**ANSWER:**     RGA denies the allegations contained in Paragraph No. 29.


### COUNT II – QUANTUM MERUIT
### (*In the Alternative*)

30.     PLAINTIFF hereby restates, re-alleges and incorporates by reference Paragraphs 1 through 22 as though fully set forth herein.

**ANSWER:**     RGA hereby restates, re-alleges and incorporates by reference its answers to

Paragraphs 1 through 22 as though fully set forth herein.

31.     MPI, through its marketing efforts, produced a ready, willing and able buyer to purchase RGA's position as mortgagee of the PROPERTY.

**ANSWER:**     RGA denies the allegations contained in Paragraph No. 31.

32.     The following is a non-exhaustive list of services MPI provided to RGA in order to market RGA's position as mortgagee of the PROPERTY for sale and, without which, BUYER would not have been introduced to the PROPERTY: MPI provided RGA with an appraised value of RGA's position as mortgagee of the PROPERTY and the pricing under certain conditions; and, MPI created materials for the advertisement and marketing of RGA's position as mortgagee of the PROPERTY.

**ANSWER:**     RGA denies that Plaintiff provided RGA with "an appraised value of RGA's position as mortgagee of the Property and the pricing under certain conditions." RGA also denies that, but for Plaintiff's services, "Buyer" would not have been introduced to the Property. RGA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph No. 32.

33.     RGA knowingly permitted and authorized MPI to market and list RGA's position as mortgagee of the PROPERTY for sale.

**ANSWER:**     RGA admits the allegations contained in Paragraph No. 33 to the extent that, upon information and belief, they allege that Plaintiff presented RGA with three offers and that each proposed offer was unsatisfactory and accordingly not accepted. RGA denies the remaining allegations contained in Paragraph 33 to the extent they are inconsistent with this answer.

34.     RGA knowingly accepted the services provided by MPI for the sale of RGA's position as mortgagee of the PROPERTY.

**ANSWER:**     RGA admits the allegations contained in Paragraph No. 34 to the extent that, upon information and belief, they allege that Plaintiff presented RGA with three offers and that each

proposed offer was unsatisfactory and accordingly not accepted. RGA denies the remaining

allegations contained in Paragraph 34 to the extent they are inconsistent with this answer.

35. The value of MPI's marketing and advertising services equal [sic] or exceed [sic] Eighty-Eight Thousand Five Hundred and 00/100 Dollars ($88,500.00), plus interest, accruing at a rate of nine percent (9%) per annum.

**ANSWER:** RGA denies the allegations contained in Paragraph No. 35.

36. MPI is entitled to payment of its commission earned as a result of the sale of RGA's position as a mortgagee of the PROPERTY to BUYER.

**ANSWER:** RGA denies the allegations contained in Paragraph No. 36.

### COUNT III – UNJUST ENRICHMENT
#### (In the Alternative)

37. PLAINTIFF hereby restates, re-alleges and incorporates by reference Paragraphs 1 through 22 as though fully set forth herein.

**ANSWER:** RGA hereby restates, re-alleges and incorporates by reference its answers to

Paragraphs 1 through 22 as though fully set forth herein.

38. All services performed by MPI inured to the benefit of RGA, as MPI brought forth and procured a ready, willing and able purchaser of RGA's position as mortgagee of the PROPERTY.

**ANSWER:** RGA denies the allegations contained in Paragraph No. 38.

39. RGA received the benefit of MPI's services, a benefit which it has retained, and continues to retain.

**ANSWER:** RGA denies the allegations contained in Paragraph No. 39.

40.     RGA has been unjustly enriched by retaining the benefits of MPI's services without paying MPI its commission earned as a result of the procurement of a buyer to purchase RGA's position as mortgagee of the PROPERTY.

**ANSWER:**     RGA denies the allegations contained in Paragraph No. 40.

41.     The value of MPI's services equal [sic] or exceed [sic] Eighty-Eight Thousand Five Hundred and 00/100 Dollars ($88,500.00), plus interest, accruing at a rate of nine percent (9%) per annum.

**ANSWER:**     RGA denies the allegations contained in Paragraph No. 41.

42.     MPI is entitled to payment of its commission.

**ANSWER:**     RGA denies the allegations contained in Paragraph No. 42.

### AFFIRMATIVE DEFENSES

**Affirmative Defense to Count I: Real Estate License Act of 2000**

1.     The Real Estate License Act of 2000 (the "Act") governs the enforceability of the Engagement Letter.

2.     Pursuant to the Act, a written brokerage agreement is void if it does not "provide the client with a right to terminate the agreement annually by giving no more than 30 days' prior written notice."  225 Ill. Comp. Stat. 454/10-25.

3.     Plaintiff's breach of contract count alleges that the Engagement Letter constitutes a valid and enforceable contract between Plaintiff and RGA.

4.     The Engagement Letter, drafted by Plaintiff, does not contain a provision permitting RGA to terminate the purported contract by giving no more than 30 days' prior written notice.

5.      Accordingly, the Engagement Letter is void and unenforceable and Plaintiff's breach of contract count must be dismissed.

**Affirmative Defense to Counts II and III: Existence of an Express Contract**

6.      Quantum meruit and unjust enrichment are equitable causes of action that may only succeed in the absence of an express contract. Accordingly, if an express contract governed the parties' relationship, a quantum meruit or unjust enrichment claim must necessarily fail.

7.      Although RGA denies that a valid and enforceable express contract existed between RGA and Plaintiff, if such a contract is found to have existed, the quantum meruit and unjust enrichment claims must necessarily fail.

8.      Accordingly, if a valid and enforceable contract is found to have existed between RGA and Plaintiff, Plaintiff's quantum meruit and unjust enrichment claims must be dismissed.

**WHEREFORE**, Defendant, RGA Reinsurance Company, denies that Plaintiff is entitled to the relief sought, or to any relief whatsoever, and respectfully requests that this Court enter judgment in RGA's favor and against Plaintiff with costs and attorney's fees awarded to RGA, and for such other and further relief as this Court deems just and equitable.

Respectfully submitted,

RGA Reinsurance Company

By: /s/ Robert S. Hunger
       One of the Attorneys for Defendant,
       **RGA Reinsurance Company**

David F. Schmidt
Robert S. Hunger
CHITTENDEN, MURDAY & NOVOTNY LLC
303 West Madison
Suite 1400
Chicago, Illinois 60606
(312) 281-3628

11

## PROOF OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing RGA Reinsurance Company's Answer and Affirmative Defenses to Plaintiff's Verified Complaint was served upon the following attorneys of record, by enclosing a true and correct copy thereof in a duly addressed, postage prepaid envelope and depositing same in the U.S. Mail chute at 303 West Madison Street, Chicago, Illinois, 60606, on this **20th** day of **June, 2014**.

Richard C. Perna
Scott A. Nehls
Fuchs & Roselli, Ltd.
440 W. Randolph St., Suite 500
Chicago, IL 60606

/s/ Robert S. Hunger
Robert S. Hunger